Mr. Moran, are you ready? Good morning and may it please the court, Jordan Moran on behalf of the appellant Brian Farabee. Mr. Farabee has spent the past 25 years in the care and Commonwealth of Virginia fighting as best he can for access to the mental health treatment that he desperately needs. This case concerns Mr. Farabee's treatment while a patient at Virginia's Western State Hospital in the fall of 2015. In the district court proceeding pro se, Mr. Farabee alleged the defendant Daniel Herr, an executive of the Virginia Department of Behavioral Health and Developmental Services, had transferred him from Central State Hospital to Western State Hospital in retaliation for litigation that Mr. Farabee had filed against Central State officials. Mr. Farabee also alleged that his treating psychiatrists and his treating psychologists, doctors Gardella and McFarland, had denied him access to a clinically recommended treatment modality known as dialectical behavior therapy. A treatment modality that even the Commonwealth of Virginia has acknowledged in the past presents the best hope for the treatment and rehabilitation of Mr. Farabee's lifelong mental illness. And he alleged that in place of that treatment, defendants had restrained him unlawfully on multiple occasions in violations of his rights as a civilly committed patient under Youngberg v. Romeo. In the district court, Mr. Farabee had no opportunity to develop and prosecute those claims. The district court directed defendants to file motions for summary judgment and then granted those motions before allowing Mr. Farabee an adequate opportunity of discovery. And in its summary judgment ruling, the district court weighed the evidence, made credibility determinations and drew factual inferences in favor of defendants. All departures from established summary judgment principles. The district court erred in the summary judgment ruling and its ruling should be vacated and set aside. I'd like to start with what I view as sort of the threshold defect in one of the two threshold defects in the district court summary judgment ruling. The fact that it proceeded to summary judgment without affording Mr. Farabee an adequate opportunity of discovery. It is black letter law that a district court may not proceed to summary judgment unless the non-movement has had an adequate opportunity of discovery. And this court has reiterated on multiple occasions that pre-discovery summary judgment is particularly disfavored in at least three circumstances that are directly relevant here. When we're dealing with a pro se plaintiff, when we're dealing with claims that present fact intensive issues such as intent, and where there is evidence material to the disposition of those claims that remains in the exclusive possession of the defendants. This court has also reiterated on multiple occasions in recent years, in cases on which Your Honor sat, in Pledger v. Lynch and Shaw v. Foreman and recently in Jenkins v. Woodard, a case on which we filed a notice of supplemental authority, that even in the absence of a formal Rule 56D affidavit, that it is an abuse of discretion for a district court to grant summary judgment where it is on fair notice of potential disputes as to the sufficiency of the summary judgment record. Those three cases are binding and directly on point and point to the outcome here. Like the plaintiffs in Pledger and in Jenkins, Mr. Farabee asked the district court on multiple occasions, on three occasions, to be appointed counsel. And he objected both to the motion for summary judgment and the supplemental motion for summary judgment on the grounds that no time had been allowed for discovery. Is that correct? Was there a scheduling order in effect at that time that was governing discovery? I'm not aware of any scheduling order regarding discovery in that case. The issue, in fact, there was no time really allowed for Mr. Farabee to obtain discovery. So he filed his complaint. Defendants moved to dismiss. He asked for permission to amend. The day the court granted him permission to amend, it ordered defendants, it actually ordered defendants, to file a motion for summary judgment within 30 days. Then after it decided that motion and this case went up initially on appeal and was remanded because the district court had not passed upon the denial of treatment claim, I believe it was within three days of this court issuing its mandate, the court entered another order, again directing defendants to file a motion for summary judgment within 30 days. So there was, you know, Mr. Farabee is an institutionalized man who suffered from severe mental illness and during the pendency of this case was often, was incarcerated for a large portion, held in a mental health facility near the end of the case. But in all that time, even within the Department of Corrections, was often kept in really strict, confined conditions in mental health facilities run by the Virginia Department of Corrections, he had no capacity, no knowledge of how to pursue discovery and importantly, no time or opportunity given the way in which the district court directed defendants essentially immediately to move for summary judgment. So returning to those cases that are directly in point here. So like the plaintiff in Jenkins, Mr. Farabee not only asked for counsel on multiple occasions, the specified reasons why he was not able to present facts essential to justifying his opposition. And in Jenkins, those facts were that the plaintiff was at the time incarcerated, suffered from severe mental illness, had a limited formal education, no legal training and no real access to legal materials or evidence. Those facts map on almost perfectly to this case. Mr. Farabee suffers from severe mental illness and has been institutionalized the entirety of his adult life for more than 25 years. During the pendency of the district court litigation, he was held for the most part by the Virginia Department of Corrections, often in severe conditions in mental health facilities. He has little formal education, no legal training and during the pendency he was held for the most part by the Virginia Department of  Corrections. And in Jenkins, that was enough to put the district court on notice that it was premature to proceed to summary judgment. That the district court should have been aware that counsel or that Mr. Jenkins needed assistance of counsel to pursue discovery and that it was premature to move to summary judgment without affording him that opportunity. Are you appealing the denial of counsel in this case? We didn't raise that. I'm sorry, Your Honor. We didn't raise denial of counsel as an independent basis for reversal, in part because of the, the, the number of issues we needed to address and also sort of the severity of the problem with the lack of discovery. But we would ask that when this case is remanded, if this case is remanded, that Mr. Farabeebe, you know, it'd be done with instructions that Mr. Farabeebe offered the appointment of counsel to prosecute this case. Because I guess what I'm trying to get my hands around is how much of the problem here was a lack of time and how much, you know, even with all the time in the world, as you describe it, your client might have a lot of trouble doing discovery without a lawyer. I believe the answer is yes. The problem was both time and the problem was also the absence of counsel. But with more time and without a lawyer, do you think your client might have been able to do some discovery? It's possible. I mean, it's hypothetical. I think the problem that we're dealing with is that Mr. Farabeebe doesn't have the know-how of how to pursue discovery. Let me be just totally clear about my concern. You haven't appealed the denial of counsel. So I think it matters that the only issue in front of us is the lack of sufficient time. So I think it matters whether your client with additional time could have done some discovery because otherwise, you know, what's the additional time for? Yeah. Well, I think once Mr. Farabeebe, particularly toward the end, was back in a mental health facility under less restrictive conditions than he was in a prison setting, yes, it would have been much easier for him. And in fact, in a previous case in Farabeebe v. Clark, in which I represented Mr. Farabeebe, one of the principal problems you're dealing with is that when he, during that time, was in the Virginia Department of Corrections custody, he often had no access to any materials. And I do know from speaking to Mr. Farabeebe now that the conditions in which he exists, in which he is institutionalized now in civil mental health facilities are less restrictive than they were in prison. Could he reasonably be characterized as a serial litigator? I would not characterize him as a serial litigator in the sense that that carries a pejorative, you know, connotation. What I would say is that Mr. Farabeebe is a man that has been committed to the custody of the Commonwealth of Virginia the entirety of his adult life. And in all that time, he has been bounced back and forth between prison and civil mental health facilities whenever his untreated mental illness has manifested physically. And he has not been shy about doing the best he can to vindicate his rights, the rights the Supreme Court has recognized in Youngberg, as a civilly committed patient. Would that include prior lawsuits where he propounded written discovery questions, for example? Does he know how to do that? Does he know how to, yeah, I believe Mr. Farabeebe could if told that it was an opportunity to pursue, he had a time to pursue discovery and the opportunity to pursue discovery, that he could serve discovery requests on defendants and pursue that on his own. I do think he would benefit on remand as an exercise of discretion from the assistance of counsel. Does that take us back to the deficiencies that you've argued in the Roseboro letter? Certainly. In fact, I'm happy to turn to the Roseboro issue. So Roseboro, as we know, says that before proceeding to summary judgment, a district court must provide a plaintiff with adequate notice of the requirements of the summary judgment rule and the consequences of not responding. And in this case, I think one of the primary deficiencies in the Roseboro notice was that it did not disclose to Mr. Farabeebe both that he had a right to oppose summary judgment on the grounds that he needed discovery, but also critically sort of the manner in which he must preserve that right and present that right. And the showing he must make in order to preserve and pursue that right. And he was not apprised of that here. The district court maintained that he didn't do enough under the rules and defendants in their response brief on appeal have actually taken the position, well, Mr. Farabeebe shouldn't be allowed to complain about the lack of discovery because he didn't meet the technical requirements of a rule of which he was not apprised, a rule of which he should have been apprised. And so I think that that does relate to one of the key deficiencies in the Roseboro notice. And it's not the only deficiency in the Roseboro notice that gives me some concern. There's also a concern that the, that the notice, while it mentions the right to file a counteract for Davids, it does not clearly instruct Mr. Farabeebe that you must oppose summary judgment. You must create a tribal issue of fact, you must seduce evidence in order to meet this burden. There's no instruction that he must do anything. There's no, no reference to the summary judgment standard, no clear instruction as to what it's expected of him instead. Whereas in Pledger v. Lynch, at least there was a mention of the summary judgment standard. But like the notice in Pledger, there's a concern here that what the notice said was you have 21 days if you want to put something in, you don't have to, it's up to you. All you need to do, the only thing you have to do is respond in an quote adequate manner to quote the pleadings. That is not a clear instruction of the potential consequences of summary judgment. And so both the lack of discovery, the fact that Mr. Farabeebe was afforded no opportunity to pursue discovery, the fact that it was apparent to the district court and should have been apparent to the district court that like the situation Shaw v. Foreman, that there was evidence material to the disposition of Mr. Farabeebe's claims, including treatment records, records related to his transfer and the rationale for his transfer, records including video evidence of the incidents that preceded the uses of restraint that are at issue in this case, that that evidence like the video evidence at issue in Shaw remained in the exclusive possession of defendants. It was not provided to Mr. Farabee in advance of summary judgment. But the lack of discovery and the concerns that we have regarding the inadequacy of the attempt to comply with Roseboro are both independently sufficient grounds to grant summary judgment. I'm sorry, to vacate the district court's grant of summary judgment. Can I ask you a question about that? So, um, just assuming hypothetically, I agree that the district court abused its discretion in granting summary judgment without discovery here, without allowing more time. Does that mean that all of Mr. Farabee's claims would go back to the district court for discovery? Cause it seemed like on some of them, what the district court was doing looked a lot more like, um, dismissing for failure to state a claim. The district court didn't go outside the few games on those like the ADA claim, for instance, just that that's not an ADA claim. And you haven't argued in your brief that for instance, the ADA claim requires discovery in order to be adjudicated. So do all of the claims go back or do the claims that you sort of argue in the  there needed to be discovery to resolve these claims or those are the ones that go back? Because the district court chose to proceed to summary judgment and it, it, in Mr. Farabee's afforded no opportunity in discovery, I think all its entire decision and all of the claims should go back. The district court can, can structure how it wants to proceed with those claims on remand. But I do think that there is potentially evidence relevant to his ADA claim, including sort of the, the bases for which he was denied treatment, the rationales for why he was denied treatment and whether it related to his, his disabilities that could potentially bear on the disposition of those claims. We have given the constraints on appeal chosen to focus on claims that we think are, are, are central in where it's very obvious that there is discovery that would have been relevant to those claims to which he was not afforded the opportunity. I mean, there were some, if I'm recalling right, where the district court said, look, there's just no allegation tying a particular defendant to a particular claim. That's not in the complaint. I mean, could we, if we agree there is no allegation in the complaint tying a defendant to a claim, do we have to send those back? It would be within the court's right, I think, to address that. And you can read in our brief where we've chosen based on the evidentiary record that Mr. Farabee, that was presented at summary judgment, we have done our best to identify those claims that notwithstanding the procedural errors should have survived summary judgment. And I think the court can see where we think there's sufficient evidence to continue with those claims. I'd like to turn very briefly just to the denial of treatment claim, because I know the court expressed a concern in its appointment of counsel regarding how the district court weighed the summary judgment evidence. And I think that in the denial of treatment claim, this issue is deceptively narrow at summary judgment. There's really no dispute that Mr. Farabee should have received DBT. There's only a question of whether he was denied it. Defendants maintain that they offered group therapy. He refused it. Mr. Farabee denies that and recounts conversations with defendants in which they expressed potential animus related to his prior litigation against central state officials and told them essentially, you will not be getting DBT at this hospital, even though it's the thing that's clinically recommended for you. And that's an affidavit versus affidavit dispute. And I just want to point out one kind of glaring problem in which the district court made in which it ruled against Mr. Farabee and credited defendants' evidence. The district court, in the absence of records demonstrating the actual offer of group therapy, the court inferred from evidence that Mr. Farabee had potentially refused other treatments at other hospitals in the past with no proven utility for his condition and inferred from that that Mr. Farabee likely would have refused DBT in this instance. I don't think that's a reasonable inference to infer that because Mr. Farabee had allegedly refused treatments that have, that he didn't want that have no utility for his condition, that he would have refused the one treatment he has spent years fighting for. That is not a reasonable inference. In fact, the reasonable inference is is that defendants had offered him that therapy. They would have been able to induce records demonstrating that offer and they have not. Thank you. Thank you, Mr. Lorraine. Mr. Chestnut. Thank you, Your Honor. May it please the court. Brendan Chestnut on behalf of the defendant appellees. This case concerns Mr. Farabee's claims that the defendants violated his 14th Amendment rights during the 32 days that he was confined at Western State Hospital. The district court correctly concluded they did not. He now raises both procedural and substantive issues with that court's ruling. Neither of his arguments on those points are persuasive. He received notice that his claims would be subject to summary judgment. He explicitly said as much. He also did not explain why he needed a discovery. He asked for an expert, but did not ever explain why he had not procured one in the more than nine months that his claims had been waiting. Nor did the defendants violate any clearly established right. He was indisputably offered treatment in that he had weekly meetings with therapists that he declined to go to with his treatment team and medications that would have helped treat specific symptoms that he had, including impulse control and his depression and anger issues. And on his restraint claims, the providers clearly had the authority to restrain him when he was either making threats or had behavior that was threatening to himself or to others. And it's helpful here to start, since a lot of the focus was on some of the procedural issues with the notice that he received. And it is incorrect that the notice did not tell him that he needed to submit something if he wanted his case to continue. In fact, it said, if he does not respond, the court will assume that he has lost interest with the case or that he agrees with the defendants. There is no way that someone can read that and think that his case will keep going if he does not respond to their evidence. Are you contending that this is a proper Roseboro notice? That's your position? Yes, Your Honor. I think that Roseboro is clear that it has to be sufficient to provide notice to someone in his position. And here Mr. Ferebee indicated that he knew that his claims were going to be subject. Do you think that each post-state plaintiff should get a different Roseboro notice that's tailored to what the judge understands, the plaintiff's understanding of the law to be? Because I thought it was more like a bright line rule. So I think that Roseboro itself says that it is supposed to be in a form of notice that's sufficiently understandable to one in appellant circumstances. And in this case, he very clearly says he understands this is going to be subject to summary judgment. And it provides that he is supposed to put in counter affidavits, which was the issue in Pledger. So, and he did that on more than one occasion here. So I think that looking at the record here and the way in which he responded to this shows that under Roseboro and given his circumstances, yes, he did. This is like the silliest question, but just what does it mean to say that he can put in evidence that contradicts, explains or avoids the defendant's evidence? I didn't understand avoids. What's evidence that avoids the defendant's evidence? I'm not sure exactly what I think, what avoiding it would. That's exactly the problem. Yeah. What does that mean? A pro se incarcerated person with mental illness. What does that mean? Well, I think it tells him that if he needs, if he has evidence that is either contradicting, explaining or avoiding it, I think avoiding it would be a more legal term about avoiding an illegal consequence. He's contradicting here. He clearly knows he needs to put in something that is contradicting or explaining it. And he does that repeatedly. Is there anything in here in your, as you read this notice, does it say anything about rule 56 D and about getting more time for discovery if it's needed or even not just getting more time, just summary judgment becomes inappropriate because someone is not in a position to come up with the relevant evidence. The notice does not do that, but he cites rule 56 D in one of his responses to a motion for summary judgment and asking for more time, or he says that he needs the assistance of counsel and he cites rule 56 D and he cites case law under rule 56 D about that. So this goes back to, you think this notice is not deficient because it turns out this plaintiff maybe knew about the ways 56 D would operate. So I think under Roseboro, it turns on whether or not someone in his circumstances. And you think that means like this particular guy, Mr. Farabee. Well, that seems like a very rough standard for district courts to apply. I'm not, I have real concerns about suggesting to district courts, you need to tailor your Roseboro notice to the particular litigant in front of you. I think most of them, I could be wrong, have one notice that they use as sort of a standard matter. So I think that's inappropriate. I don't think it's inappropriate to use a specific notice. And I think you can evaluate whether or not it's sufficient on its face. I think you can also say as evidence of whether or not you meet the Roseboro standard, that they've provided information that put that allowed him to understand this. And when he indicates that he understands the notice that he needs to put in as evidence, there's, I suppose you could look at it as a type of either harmless error or that this is the actual notice that it was sufficient to put someone in his circumstances on notice about it. And here he has said in other places that he has gone on, he's earned a GED, he's scored in the top 10% for freshman admissions standards, for, so I think that shows that he is able to understand and read this and his responses to it are showing exactly what you would want a pro se plaintiff to put forward there. He put forward an extensive affidavit in response to it. He put forward records that he has. He apparently has, although it's not, I don't think it's in the record here, but he has extensive records of all of his case filings and medical issues. So that's the problem, Mr. Chestnut, back to Judge Harris, good question to you that the Roseboro notice is like the Miranda warnings. You don't give a, a different Miranda warning to a person with a PhD than a person who has a GED, do you? So do you? I'm not aware of any difference that you do on that, but it's. No, because it's what, it's the, it's boilerplate. Craig, you can answer. I mean, I think it's common sense. That's what's called a boilerplate. I am not entirely familiar with Miranda warnings, but I do think that if someone started giving a Miranda warning. You, you, you're not familiar with. I'm not familiar with what the, whether there is a standard in which a, if a. Oh, I thought everybody had to take crim law in law school. Yes. I'm just saying, I don't, as to the specific point of for responding, if a someone gives a Miranda warning and someone then cuts them off and says, I know Miranda, here's what it says. If that would be the police officer would do is say, excuse me, be quiet. I've got to finish this boilerplate. I don't care what you say. I don't need that. No, you do need it. Cause I need it. I think. Basically like some defendants aren't going to know. So we'll tell all defendants. And I, I had always understood Roseboro notices to operate the same way. I mean, I, maybe there's just, I don't want to be like all semantic about it, but you alluded to the idea that maybe your argument is not that the Roseboro notice is adequate. It's that it was harm, that the deficiencies in the notice were harmless in this case. So I think you could view it that way. I do think that Roseboro says that you're supposed to provide notice that someone is able to put in counter affidavits and that if they don't, their case could be dismissed. He also, this notice does include both of those things and it does. I do not understand you to be arguing that from this notice, Mr. Farabee understood 5060. No, this notice does not specifically reference 56. That that was enough to make a Roseboro notice deficient. So I think that his response in this at specifically invoking rule 5060. Shows what? That this notice was sufficient? I think he read into it, 5060. I think the fact that he specifically invoked it does mean at least in this case, there would be, it's harmless error because he asked for that. The district court analyzed whether or not rule 5060 had been complied with and it specifically ruled on those. And they also, in terms of asking his responses to that was to request counsel and they have not appealed the request for counsel here. So the issue with that is you would have to then say, the rule 5060, he knew about rule 5060. He understood that the court analyzed it, but we're going to send it back for it to analyze it again. And I think that is a way in which you can say this is harmless because they've already addressed it. Plaintiff contends that he adequately identified the needed information in your possession as to his medical records and his confinement records. Do you accept that? No, Your Honor. I think that's not an accurate depiction of what he put forward there. He did mention that he wanted and had not been able to find an expert witness to testify on his behalf. But in this record, it also shows that he submitted documents that have the contact information for the expert, at least one of the experts who testified on his behalf in another case. And there's no dispute that he had access to a phone and would be able to call them. He had more than, it's about nine months until the motion was filed. That is in both of the cases we have. But wouldn't it have been just virtually impossible for him to respond to your summary judgment motion without those records? Because no witness could have formulated an opinion on medical judgment without them. So I don't think that that's the case. I think he has access to the medical records that he would need. And he could have invoked that. He has access to the medical records he needs. Are those the same records that you have custody and control of? So the ones that he specifically mentions in his request is whether or not there's who issued a specific order to give him Thorazine on occasions. It was issued by the attending physician when he was admitted to the hospital. I don't think that discovery on that point unless is necessary. He hasn't identified anything with personal knowledge about it. Why are you going to decide whether or not his discovery is necessary? I mean, my goodness, if the other side had to make that judgment, plaintiff have a hard time. Well, I don't think you need that. That's not the rule. It's his case. He has the burden of proof and then you're going to say, no, you don't need that. You do have the records. You have it. My goodness. Do you admit that he has a mental illness? Yes, your honor. He has a mental illness and he's incarcerated, correct? I believe currently. Yeah. Was it? I mean, go ahead. Well, he was incarcerated. He was in debt. He was committed as opposed to incarcerated in prison. Yeah, but I don't know how far you go back. I go back with this case for a long ways. And when he got in trouble, then you send him to a regular prison. One mentally ill enough not to go to prison. But then after he finished that, oh, no, no, you meant to come back to us here. That's gone off. I got counsel said quarter of a century. Why don't you give him the treatment that he needs? I mean, I'm not sure. It's just I mean, I can say I go way back. You probably don't in this case. And he's just saying, I need this treatment. And then with restraints and you bring it down like this time at this level, and you bring it down, you bring it down. And then to avoid this staying too long, then you go back to another regiment. You go back again, step down, step down. I mean, at some point. And then you, you know, it's. I just don't understand that in terms of this is a court of justice. And, you know, you're saying that this person on these conditions, you don't get discovery, you don't get counsel. And he did ask for counsel, didn't he? He did. Did you object to that? I don't believe there anyone entered an objection. I believe they don't do court. Are you sure? I would have to check. That's OK if you don't know. But you don't think you did. The court just on its own said no. I'd have to check the record about whether or not it was. So I don't take up your time with the record. I thought that you might know that. But you told me it based on your recollection. You did not object. So the court, without objection, said no. Correct. As far as you know, you recall you can do a 28 J if you want, which we allow next, but but you can't tell us now. I not off the top of my head. I don't think it was a motion to dismiss file first. Right. And then the court urged you to file summary judgment. Is that right? So they we filed a motion to dismiss as to his original complaint. Right. He then filed an amended complaint. And after the amended complaint, the district court entered an order saying file summary judgment. Right. This one said it told you to file it. The court told you to file that. Consistent with a local rule in the case. So that's what you said. It said it a local rule on that point. Oh, OK. Can I just ask a question? I mean, it does seem like this question of whether he was offered DDT treatment or not, you've got these dueling affidavits and the records on that obviously are with your client. I mean, there must be records that say either he was offered this and wouldn't do it or don't say that. Why wasn't that stuff attached with the affidavits? It seems like so much of so many of the factual disputes in this case can easily be cleared up from your records. So why didn't they get attached to the affidavits? I'm not clear on why they were not attached. I think they thought that the records they attached were sufficient to demonstrate that there was no genuine issue of material fact. And here, what we've argued is that even accepting those his allegations that he was not offered DDT and he was told that he would not receive it while at Western State Hospital for he was there for one month. And he this court has said that he does not have a constitutional right to a specific preferred treatment. I did that in the therapy against your other case in which he had and it's obviously him with substantially similar conditions. I thought that was where someone had made a professional judgment that he didn't need the treatment, but that's not what happened here. Nobody is saying he need the treatment. They're just saying he got the treatment. So just to be they did not say that he had received the treatment. I'm sorry, he was offered the treatment and he refused to do it. Yes. So there's a dispute about whether or not they said that they offered him group DDT treatment. He said what is not in this case that has been in other cases is the defense is somebody made a professional judgment that that was not necessary treatment. But we don't have that in this case. We do have the professional judgment that he should have his other that other treatment modality, which was meeting with his treatment team every week, that he has not disputed that he does not do. He was also offered medication to help control some of his. I mean, it's sort of a yes or no, but it's. Am I my understanding of the record is that nobody is arguing that the reason he wasn't offered DDT treatment is because somebody made a professional judgment that it was not the appropriate treatment. No, they are they what they said it was not currently available and they were working to do that on an individual basis. But he was offered it on a group basis and he refused to do it. He says I was not offered it on a group basis. He also said that he agreed that with the person that he had not been offered DDT when she was referring to the group therapy session. So there's actually a he contradicts himself in that on that point where he said that he agreed with Dr. McFarland that he hadn't been offered DDT when she said he was offered group therapy sessions. So he goes back and forth on that point. But I think the other issue that I wanted to make sure to address something that you'd mentioned at the beginning outside there are claims in here that have been addressed by the district court where there are no disputes of fact, and it's specifically even about whether or not a specific defendant was responsible for actions. There's no reason to send those back to the district court to reenter the same order addressing this as a matter of law. And what are they? You brushed over what they are. What is it? Those. So there's the Americans with Disabilities Act claim. There are specific claims as to the individual defendants about whether or not they're responsible for care. So Mr. Herr had no there are no allegations in the complaint about whether or not he was involved with individual care decisions. Dr. McFarland, I what when she put in the affidavit, it was uncontested that she didn't have anything to do with giving him Thorazine. That was an allegation that had to go that went directly to Dr. Gardella at. And there's a dispute about whether or not Dr. Gardella did it versus Anderson. But so you loaded up affidavits for these people and no, he had no discovery. And then you say that's those are also as a matter of law. No evidence against it. Right. Those experts you talked about. So those were I said, I thought you said who testified to this? So this was done by affidavit on it. That's what I said.  Affidavits were submitted on your behalf, right? Yes, Your Honor. Yes. Not a it's not a trick question. And then he but he had no discovery. He had more than nine months in which to propound that. And as counsel conceded, he would be able to and understands how to do that. If he understood that he had. If you said that he had the opportunity to do it now. So there was a discovery of case scheduling order in effect that outlined the time period for discovery and the deadline for filing dispositive motions. There's I don't believe there's a scheduling order. No, it wasn't. Exactly. No. The case had been pending and he had filed this in 2016 and the first summary judgment motion wasn't decided until the beginning. Why was there no scheduling order for discovery? You said you said nine months. So they the court had denied the original motion to dismiss and order them to respond. He then had time from then to respond and conduct discovery. He did not. But what would be the. The direction, the specific direction to the plaintiff that he was in a period where he needed to be investigating the facts of this case? And was there a specific order from. Was was there anything that had come from the court separate and apart from the Roseboro notice during that period that would recognize for the benefit of the parties that there was this opportunity now to do some discovery? Besides the Roseboro notices and besides it, ordering for summary judgment briefing to be conducted. I'm not aware of anything else I'd have to review the record. OK, I see that my time has expired for the reasons in our brief and today. And we ask that you affirm the judgment of the district court. Thank you, Mr. Chestnut. Mr. Moran, you have a few moments reserved. Just a few things, your honors. In response to Judge Rory's question, there was no objection made by defendants to the request for counsel, the the motions to appoint counsel and the orders to denying those motions were consecutive. So dockets thirty eight and thirty nine on the district docket. And then motions two and three were seventy four and seventy five. And the order denying was docket entry. Seventy six counsel for defendants suggested on appeal stated in his argument that Mr. Fairby had access to all the medical records he needed. That's simply not true. That's extra record conjecture based on the idea that because Mr. Fairby hobbled together a couple of pieces of paper that were kept in his in his prison cell and mental health facilities that we can infer with no basis in the record that he had everything he needed to oppose summary judgment. And that's simply not accurate. I would agree with the court that the Roseboro notice is prophylactic, that it would not be an administrable rule to have a different new Roseboro notice tailored to every plaintiff. But I'd also disagree with the defendants that the notice was hard. The deficiencies here were harmless. Again, reiterate the harm that I pointed out in my own opening argument that there was no disclosure of Mr. Fairby's rights to pursue discovery or oppose summary judgment on the grounds that was premature. No instruction as to the manner in which he need to make that that objection. No instruction as to the showing he needed to make in order to sustain that objection. The district court, because he was not given that instruction, ruled that he had not met this burden. Defendants argue in their response brief again that Mr. Fairby, even though he was not apprised of the technical requirements of this rule, failed to comply with them. And he should therefore be precluded on appeal from arguing that it was premature to grant summary judgment because he didn't have discovery. And I want to reiterate that there's no confusion at this point, that defendants maintained through affidavit evidence that they offered Mr. Fairby group therapy. They claim, in pointing to an affidavit, that he didn't deny being offered group therapy. He just denied being offered individual therapy. That's not what his affidavit says. That's not what his declaration says. The only way to get there is by reading into his own words, words that aren't there. Mr. Fairby denied being offered therapy of any kind. The therapy that the Commonwealth of Virginia and even defendants have acknowledged is the one clinically recommended treatment modality for the mental illness that has kept him institutionalized the entirety of his adult life. The one treatment he has been fighting for years to obtain, the one treatment he has a right to obtain, and the one treatment he keeps being denied. And so for the reasons submitted in our briefs and here at Argument Today, we'd ask that you set aside the district court's judgment, grant a summary judgment for defendants, and remand for further proceedings. Ms. Moran, before you leave the podium, we note that you're court-assigned. Yes, Your Honor. On behalf of the Fourth Circuit, I want to thank you for taking this case. And lawyers like yourself do an invaluable service to the court and to our system of justice, and we appreciate your doing so. We want to note that. Well, thank you, Judge Gregory. It has honestly been a tremendous honor. It's now the second opportunity I've had to represent Mr. Farabee in this court, and it's an honor. He deserves the help, and I'm happy to be able to provide it. Thank you. And, Mr. Cheston, of course, we note your able representation of your client as well. We'll come down to Greek Council and proceed to our next case.
judges: Roger L. Gregory, Pamela A. Harris, Louise W. Flanagan